IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MATTHEW B. WHITAKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:11CV380–HEH |
| WELLS FARGO ADVISORS, LLC, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION
(Granting Defendant's Motions to Dismiss)

This is an action alleging defamation and tortious interference. It is presently before the Court on a Motion to Dismiss filed by Defendant Wells Fargo Advisors, LLC ("Wells Fargo"). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons stated below, Defendant's Motion will be granted.

### I. BACKGROUND

Plaintiff's Complaint contains the factual allegations that follow. As required by Fed. R. Civ. P. 12(b)(6), the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to the Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Wells Fargo, a non-bank affiliate of Wells Fargo & Co., provides advisory services, asset management, and other financial services through registered financial

advisors. On February 13, 2004, Wells Fargo hired Plaintiff as a Financial Advisor. Plaintiff was discharged from employment on July 26, 2010. (Pl.'s Compl. ¶ 11.)

On July 30, 2010, Wells Fargo filed a Uniform Termination Notice for Securities Industry Registration Form U5 ("U5") with the Central Registration Depository ("CRD"). The CRD is a securities and investment industry database that contains information about brokers and financial advisors. Wells Fargo's U5 set forth the reasons for Plaintiff's termination: "Violation of firm policies and procedures: Failure to manage personal finances—associates must not abuse checking account privileges." (*Id.* at ¶ 13.) The U5 further stated that Plaintiff was discharged after being accused of "violating *investment-related* statutes, regulations, rules, or industry standards of conduct." (*Id.* at ¶ 11 (emphasis in original).) Plaintiff contends that this latter statement was false because he "had not been accused of violating any *investment-related* standard." (*Id.* at ¶ 12.)

Following his termination from Wells Fargo, Plaintiff sought employment with Davenport & Company, Inc. ("Davenport"). On July 29, 2010, Davenport offered Plaintiff a salaried position as Vice President and Investment Executive in their Richmond, Virginia office. On July 30, Davenport reviewed the U5.

Plaintiff accepted the position with Davenport on August 6, 2010. That same day, Wells Fargo filed an amended U5. The amended filing restated that Plaintiff had been accused of violating "*investment-related* statu[t]es, regulations, rules or industry standards of conduct." (*Id.* at ¶ 20 (emphasis in original).) In addition, the revised U5 expanded upon the explanation for Plaintiff's discharge, adding that he had

"systematically deposited nonsufficient funds (NSF) checks between two banks."[1] (*Id.* at ¶ 21.) At the time it filed the amended form, Wells Fargo was aware of Davenport's employment offer to Plaintiff. In Plaintiff's view, Wells Fargo had no "business need, ... reason, or ... purpose" for its second filing and did so only to interfere with Plaintiff's "employment contract and business expectancy with Davenport." (*Id.* at ¶ 22.) Upon reviewing the revised U5, Davenport rescinded its employment offer on August 13, 2010.

Based on the foregoing, Plaintiff filed this action in the Circuit Court of the City of Richmond ("the Circuit Court"), alleging defamation and tortious interference. Wells Fargo filed an answer and demurrer in the Circuit Court and timely removed the action to this Court on June 13, 2011.

On June 29, 2011, Defendant Wells Fargo filed the instant Motion to Dismiss pursuant to Rule 12(b)(6), claiming that the Complaint fails to allege an actionable defamatory statement. Specifically, Defendant reads the Complaint as conceding that Plaintiff had been accused of violating internal checking account rules, but challenging as "false" the classification of that alleged misconduct as "investment-related." (Def.'s Mem. Supp. 8.) Because the U5 defines "investment-related," Defendant asserts that this Court can determine the truth or falsity of the contested characterization as a matter of law. Alternatively, Defendant claims that its classification of the allegations is a matter of opinion protected by the First Amendment, and that its "statement" did not proximately cause Plaintiff's alleged injury. Finally, Defendant argues that because its

---

[1] This practice is commonly referred to as "check kiting." *See United States v. Mayo*, 295 F. Supp. 2d 608, 609 (E.D. Va. 2003).

statement was not tortious, it did not improperly interfere with Plaintiff's contract. The matter is ripe for decision.

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

To survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Id.* at 555, 127 S. Ct. at 1964–65. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588

4

F.3d at 193. The Court must assume plaintiff's well-pleaded factual allegations to be true and determine whether they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

Generally, the Court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The Court may, however, consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (per curiam); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### III. ANALYSIS

#### A.

To state a cause of action for defamation under Virginia law, a plaintiff must allege that the defendant (1) published (2) an actionable statement with (3) the requisite intent. *See Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713, 724-25 (1985). Whether a statement is actionable is a question of law to be determined by the Court. *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985). Here, the issue is whether Wells Fargo's indication on the U5 that Plaintiff was accused of "investment-related" misconduct constitutes an actionable statement.

A statement is actionable only if it is both false and defamatory. That is, it must first "contain provably false factual statements." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47, 670 S.E.2d 746, 751 (2009). A statement will not support a defamation

claim if it is true, *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005). Secondly, the statement must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559. In this case, the Court finds the statement at issue to be both true and non-defamatory, and therefore not actionable.[2]

First, the Complaint fails to allege a false statement of material fact. Importantly, the Complaint does not dispute the verity of the Termination Explanation portion of Wells Fargo's U5, which stated that Plaintiff had been discharged due to an alleged "[f]ailure to manage personal finances" and "abuse [of] checking account privileges." (Pl.'s Compl. ¶ 13.) Rather, the purported falsehood was Wells Fargo's *categorization* of the reasons for Plaintiff's termination—specifically, its affirmative response to Termination Disclosure Question 7F(1), which asked whether Plaintiff was "discharged ... after allegations were made that accused [him] of ... violating *investment-related* statutes, regulations, rules, or industry standards of conduct."[3] (*Id.* at ¶ 11.) The dispositive question, therefore, is whether the allegations underlying Plaintiff's termination were "investment-related" as that term is used in the U5.[4]

---

[2] Because it finds the alleged false statement to be both true and non-defamatory, the Court declines to address Defendant's alternative contention that it is a matter of opinion.

[3] In its Reply Brief, Plaintiff argues that the indication on the U5 of "investment-related" allegations "carries the innuendo that [Plaintiff] was guilty of such a[] ... violation." (Pl.'s Reply 7.) The Court disagrees. Question 7F(1) asks only about the *existence* of allegations—nothing more. In representing merely that the subject was discharged after "*allegations were made* that accused him of" misconduct, an affirmative answer to Question 7F(1) neither indicates nor implies that the employee actually committed the underlying misdeeds.

[4] It is irrelevant in this case whether Plaintiff actually engaged in check kiting. The issue is whether the *allegations* against the Plaintiff—true or false—are "investment-related," and if not, whether Wells Fargo's misrepresentation to that end harmed the Plaintiff.

6

The U5 defines "Investment-Related" as "pertain[ing] to ... banking ... (including, but not limited to, acting as or being associated with a broker-dealer, issuer, investment company, investment adviser, futures sponsor, bank, or savings association)."[5] (Def.'s Mem. Supp. Ex. C.) In his capacity as a Financial Advisor for Wells Fargo, Plaintiff acted as an *investment adviser* with a *brokerage* and *investment company*. Moreover, Plaintiff was discharged for having allegedly "abuse[d] *checking account* privileges" by "systematically deposit[ing] nonsufficient funds (NSF) checks between two *banks*." (Pl.'s Compl. ¶¶ 13, 21.) These accusations plainly pertain to banking, and thus are "investment-related." The Court therefore finds that, as a matter of law, Wells Fargo's representation in its U5 that Plaintiff was terminated for an alleged violation of "investment-related" standards was true.

Second, Plaintiff has failed to plead a causal nexus between the purportedly false statement and his alleged injury. As the Fourth Circuit has explained, "if the gist or 'sting' of a statement is substantially true, minor inaccuracies will not give rise to a defamation claim." *AIDS Counseling & Testing Ctrs v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotations and citation omitted); *see also Saleeby v.*

---

[5] Defendant has attached to its Motion four lettered exhibits: (A) Wells Fargo's U5, filed on July 30, 2010; (B) Wells Fargo's Amended U5, filed on August 6, 2010; (C) Form U5 Explanation of Terms; and (D) a 2010 FINRA regulatory notice concerning the timely and accurate completion of U5 forms. Plaintiff objects to the Court's consideration of these Exhibits.
    Plaintiff does not contest the authenticity of these Exhibits, but asserts that they "contain factual material which is not referenced in the Complaint." (Pl.'s Resp. 3.) Contrary to Plaintiff's contention, the Complaint continuously references, and is based upon, the U5 form. Because the U5 is central to Plaintiff's claim and "sufficiently referred to in the [C]omplaint," *Am. Chiropractic Ass'n*, 367 F.3d at 234, Defendant's incorporation of that form (Exs. A, B), as well as documents intended by FINRA to be considered in conjunction with it (Exs. C, D), is appropriate. Plaintiff's objection is therefore overruled.

*Free Press, Inc.*, 197 Va. 761, 763, 91 S.E.2d 405, 407 (1956) ("Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance."). In other words, "the falsity of a statement and the defamatory 'sting' of the publication must coincide." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). In this case, Plaintiff relies on a statement that was, at most, an immaterial inaccuracy—a mischaracterization of a concededly true underlying fact.

The Complaint states that "Davenport did not rescind its offer" upon review of Wells Fargo's original U5, but only after reviewing the amended U5. (Pl's Compl. ¶ 19.) Indeed, Plaintiff acknowledges that he "suffered no known damage from the publication of the original U5; Davenport extended its job offer to [him] with full knowledge of the original U5." (Pl.'s Reply 6.) Taking these allegations as true, then, the contents of the amended U5—and not the original U5—triggered Plaintiff's injury. Yet both the original and amended U5s contained the same alleged misrepresentation. The latter simply "republished the same [alleged] false statement of material fact that as of the date of [Plaintiff's] discharge ... allegations had been made that accused [Plaintiff] of violating investment-related" standards. (Pl's Compl. ¶ 20.)

Importantly, the sole amendment to Wells Fargo's U5 was a more fulsome description of the allegations which lead to Plaintiff's termination. (*Id.* at ¶ 21.) In particular, the amended filing added that Plaintiff had been accused of check kiting. Because Plaintiff's employment offer was withdrawn in reaction to the amended U5, the Court can reasonably conclude only that it was the detailed disclosure of the accusations underlying Plaintiff's discharge, and not the purported misdescription of those allegations

as "investment-related," that caused Plaintiff's injury. Accordingly, the purported falsity and the defamatory "sting" set forth in the Complaint do not coincide. The inaccuracy, if any, of the Defendant's statement is insufficient to support Plaintiff's defamation claim.

In sum, because the Court finds that Wells Fargo's representation in its U5 was true as a matter of law, Plaintiff has failed to allege a provably false statement of material fact. Moreover, the Court cannot reasonably infer from the facts alleged that that Defendant's statement was defamatory, even if inaccurate. Accordingly, Plaintiff's Complaint fails to state a plausible claim of defamation. Count One will be dismissed.

### B.

To state a viable claim of tortious interference with an at-will employment contract,[6] a plaintiff must allege "(i) the existence of a valid contractual relationship or business expectancy; (ii) [defendant's] knowledge of the relationship or expectancy ...; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to [the plaintiff]." *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 558-59, 708 S.E.2d 867, 870 (2011) (citations omitted). Additionally, "when a contract is *terminable at will*, a plaintiff ... must allege ... that the defendant employed '*improper* methods'" to intentionally interfere. *Id.* (citing *Duggin v. Adams,* 234 Va. 221, 226–27, 360 S.E.2d 832, 836 (1987)) (emphasis in original). In this case, therefore, Plaintiff must also show

---

[6] Plaintiff has not alleged that his contract with Davenport was for a fixed duration (Pl.'s Compl. ¶¶ 16-17), and Virginia law "strenuously adhere[s] to the presumption of at-will employment." *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995) (discussing Virginia cases).

9

that Defendant's interference was "illegal, independently tortious, or violate[d] an established standard of trade or profession." *Id.* Plaintiff has failed to do so.

The Complaint alleges that "Wells Fargo's filing of the amended U5 was defamatory, improper, unethical, and contrary to industry standards, practices, and customs." (Pl.'s Compl. ¶ 23.) The Court need not accept such conclusory allegations. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). Further, the facts before the Court do not support Plaintiff's assertions.

As the U5 forms were not defamatory, Plaintiff has not plausibly alleged that Defendant's interference was independently tortious. Nor has Plaintiff claimed that Wells Fargo acted illegally. Finally, the Defendant did not violate industry standards. To the contrary, FINRA regulations obligated Wells Fargo, as a member financial firm, to file a U5 disclosing Plaintiff's discharge, and to submit an amended U5 if its original filing insufficiently detailed the reasons for the termination.[7] (Def.'s Mem. Supp. Ex. D.)

Plaintiff also alleges that "Wells Fargo filed the amended U5 with the willful, wanton, and malicious intention to cause Davenport to withdraw its employment offer." (Pl.'s Compl. ¶ 24.) Again, no facts in the record would reasonably lead the Court to such a conclusion. More significantly, Virginia law makes clear that ill intentions alone do not amount to "improper" interference. In *Dunn, McCormack & MacPherson v. Connolly*, the Virginia Supreme Court explained "the limited nature of what constitutes

---

[7] For the same reason, Plaintiff has not adequately alleged that Wells Fargo *intentionally* interfered with his employment expectancy.

10

'improper' interference in cases involving contracts terminable at will," and declined to "extend the scope of the tort to include actions solely motivated by spite, ill will and malice." 281 Va. at 559-60, 708 S.E.2d at 870-71. Because the complaint in that case alleged that the defendants' interference was "motivated solely by ... personal spite, ill will and malice," the Court found it to be legally insufficient. *Id.* This Court reaches the same conclusion in the case at bar.

The Complaint does not plausibly suggest that Wells Fargo intentionally and improperly interfered with Plaintiff's employment expectancy. Accordingly, Plaintiff has failed to state a viable claim of tortious interference, and Count Two must be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss will be granted. An appropriate Order will accompany this Memorandum Opinion.

                                                              /s/
                                        Henry E. Hudson
                                        United States District Judge

Date: Sept. 28, 2011
Richmond, VA